UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| DUSTIN SHANE WRIGHT, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 2:17-cv-00070 |
| ) | Chief Judge Crenshaw |
| FENTRESS COUNTY, TENNESSEE, ) | |
| and CHARLES SCOTT "CHUCKY" ) | |
| CRAVENS, in his official and individual ) | |
| capacity, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

In yet another case arising out of Charles Cravens' tenure as Sheriff of Fentress County, Tennessee, Fentress County moves to dismiss the claims against it brought by Dustin Shane Wright ("Wright"), a former inmate at the county jail. Just as in Doe #1 v. Cravens, No. 2:17-CV-00049, 2018 WL 1522401, at *1 (M.D. Tenn. Mar. 28, 2018), it argues that Cravens' conduct did not represent a policy or custom so as to make the county liable for the deprivation of civil right in violation of 42 U.S.C. § 1983. Also as in Doe #1, Fentress County argues that it is not liable for state common law intentional tort claims because of the governmental immunity provisions set forth in Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. § 29-20-21, *et seq*.

In Doe #1, the Court dismissed the state law claims against Fentress Country pursuant to the TGTLA, but declined to dismiss the federal claims. This time, the Court reaches the same result, albeit for slightly different reasons.

**I. Factual Background**

The allegations in the Complaint, accepted as true and construed in Wright's favor for present purposes, Mills v. Barnard, 869 F.3d 473, 480 (6th Cir. 2017), are as follow:

During the relevant period, Sheriff Cravens was the chief law enforcement officer of Fentress County and responsible for the operation of the county jail. On November 13, 2016, Wright was confined at the jail when two inmates began "picking on" another inmate. (Doc. No. 1, Complaint ¶ 8). This prompted the jail administrator to "chastise[]" the other inmates for not doing anything to stop the altercation. (Id. ¶ 9). Shortly thereafter, Sheriff Cravens entered the housing unit and "screamed at the inmates and told them they should not be able to look at themselves in a mirror. He also challenged their collective manhood." (Id. ¶ 10). When Wright spoke up on behalf of his fellow inmates, Sheriff Cravens became "visibly irate" and ordered Wright to follow him to the booking area. (Id.).

Once in the booking area, Sheriff Cravens "continued to berate" Wright, and struck him in the head. Wright was then "shot with a taser and incapacitated." (Id. ¶ 11). Thereafter, Wright was "placed in a headlock and handcuffed, . . . struck two (2) to three (3) more times in the head by [Sheriff] Cravens, and "then kicked . . . in the back." (Id.).

After the assault, Wright was placed "in an isolated, padded holding cell" that had "no running water or facilities of any kind." (Id.). Four days later he was placed in a different, isolated, holding cell for an additional four weeks. (Id. ¶ 14). He was then allowed to return to general population where he served out the remainder of his sentence without incident.

Wright was not charged with a crime or a jail policy violation in relation to these events. Sheriff Cravens, on the other hand, was criminally charged in this Court with depriving Wright of his federal constitutional rights. Sheriff Cravens pled guilty to the charges on April 20, 2017.

Wright claims that, as a result of the events that began on November 13, 2016, he "suffered injuries and/or damages, including, but not limited to, mental anguish, physical and mental pain and

suffering, embarrassment, and humiliation." (Id. ¶ 16). He brings federal claims under 42 U.S.C. §§ 1983 and 1985 against Sheriff Cravens and Fentress County for the deprivation of his constitutional rights under the Fourth, Fifth, Eighth and Fourteen Amendments. He also brings state law claims for assault, battery, and the intentional infliction of emotional distress.

## II. Federal Claims

In Monell v. Department of Social Services of New York, 436 U.S. 658, 691 (1978), Supreme Court held that "a municipality cannot be held liable solely because it employs a tortfeasor[.]" In other words, "under § 1983, local governments are responsible only for 'their own illegal acts.' . . . They are not vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). Therefore, "a municipality is liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights." D'Ambrosio v. Marino, 747 F.3d 378, 386 (6th Cir. 2014) (quoting Monell, 436 U.S. at 692).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 131 S.Ct. at 1359. Thus, to state a municipal liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013); accord

3

Boulton v. Swanson, 795 F.3d 526, 531 (6th Cir. 2015).

Based upon those principles, Fentress County moves to dismiss the federal claims relying (as it did in Doe #1) on the Sixth Circuit's decision in Wooten v. Logan, 92 F. App'x 143, 146 (6th Cir. 2004), and the Second Circuit's decision in Roe v. City of Waterbury, 542 F.3d 31 (2d Cir. 2008). Unlike in Doe #1 where plaintiffs alleged a pattern and practice by Sheriff Cravens in seeking sexual favors from inmates, those cases are inapposite to the facts presented here.

In Wooten, the Sheriff of Pickett County, Tennessee, while in uniform and driving a squad car, stopped a vehicle and allegedly participated in the rape of a handicapped minor who was a passenger therein. In Roe, the Mayor of Waterbury, Connecticut had sexual intercourse with minors in his office, home, and a police vehicle, using a city-owned cellphone to arrange the rendezvous. Notwithstanding the reprehensibility of those acts, municipal liability did not attach because neither the Sheriff or the Mayor was acting as a policymaker. Even though the Sheriff in Wooten allegedly "used his 'blue lights and police light' to pull over [the] car, and utilized his 'uniform, badge and gun' to effectuate the rape, [the Sheriff] acted in the guise of a patrol officer making a traffic stop–not as chief law enforcement officer." 92 F. App'x at 146. Similarly, in Roe, "the actions taken by [the Mayor] were in an area in which he was not a policymaker," and "he had no authority to make policy authorizing, condoning or promoting the sexual abuse of children. 542 F.3d at 40.

Doe #1 presented analogous facts in the sense that plaintiffs alleged sexual impropriety by an individual who had final policymaking authority in certain areas. Nevertheless, this Court distinguished Wooten and Roe because plaintiffs claimed that "Sheriff Cravens 'ran the Fentress County Jail as a personal fiefdom, only complying with local, state, and federal law insofar as it was

4

convenient for him.'" 2018 WL 1522401, at *3. Among other things, plaintiffs alleged that Sheriff Cravens

> "maintained a reputation for bestowing gratuity upon female inmates that were flirtatious with him," while at the same time "maintained a reputation for violence and capriciousness against inmates who opposed him." To secure sexual favors, Sheriff Cravens allegedly doled out "small favors like cigarettes, warm clothes, family visits, and phone calls."
>
> Plaintiffs further assert that Sheriff Craven's misconduct was widely known, and even discussed "openly [in] public forums." He allegedly had sex with Jane Doe # 1 in his office at the jail. Other times, he took inmates from the jail in a county truck to his trailer where he and the inmates would engage in sex. On a least one occasion, this was preceded by a stop at the local Dairy Queen for some ice cream. On some occasions, Sheriff Cravens was seen by members of the public riding alone with jail inmates, while other times "[c]ounty deputies and employees facilitated the Plaintiffs' abuse by transporting plaintiff to locations within and outside the jail where the deputies and employees left the Plaintiff alone with Defendant Cravens for his sexual gratification."
>
> Further, Plaintiffs allege that Sheriff Craven "routinely instructed employees of the Fentress County Sheriff's department to bring cigarettes and other favors to Jane Doe # 1 and Jane Doe # 2, in furtherance of his grooming the inmates for further sexual predation." Guards would also joke about the escapades. . . ."

Id. at 3-4 (citations omitted).

In this case, unlike in Doe #1, Wright does not allege a pattern and practice of civil rights violations by Sheriff Cravens, a failure to train or enforce policies that would prohibit unconstitutional acts, or even that the Sheriff ran the department like a "personal fiefdom" that was widely known by county residents. Rather, Wright alleges a transient constitutional violation by Sheriff Cravens acting in his role as a policymaker for the Fentress County jail. That, too, can be a basis for municipal liability because of the way the Supreme Court has defined "policy" and custom" for purposes of Section 1983.

"Typically, a municipality is immune from § 1983 liability, unless it can be shown that the

unconstitutional actions it is charged with committing is the result of a municipal policy or custom." Paterek v. Vill. of Armada, Michigan, 801 F.3d 630, 651 (6th Cir. 2015) (citing Monell, 436 U.S. at 694. "To be sure, 'official policy' often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time," Pembaur, 475 U.S. at 481-82, but "[t]he phrase policy or custom is not so limited," Paterek, 801 F.3d at 651. This is because

> a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. *If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood.* More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983.

Pembaur, 475 U.S. at 482 (emphasis added). That is, "[t]he requirement that a municipality's wrongful actions be a 'policy' is not meant to distinguish isolated incidents from general rules of conduct promulgated by city officials. It is meant to distinguish those injuries for which 'the government as an entity is responsible under § 1983[.]'" Meyers v. City of Cincinnati, 14 F.3d 1115, 1117 (6th Cir. 1994) (citing Monell, 436 U.S. at 694).

"In any § 1983 suit . . . the plaintiff must establish the state of mind required to prove the underlying violation" and "proof that a municipality's legislative body *or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right* necessarily establishes that the municipality acted culpably." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 405 (1997) (emphasis added). Thus, for example, Hamilton County, Ohio could be liable where deputies, acting pursuant to instructions from the county prosecutor, forcibly entered premises to serve *capiases*, Pembaur, 475 U.S. at 485); Key West, Florida could be liable where its Chief of

6

Police enforced a statute that prohibited leaks to the press regarding internal police investigations, Cooper v. Dillon, 403 F.3d 1208, 1223 (11th Cir. 2005); the City of Highland Park, Michigan could be liable where plaintiff alleged that the Chief of Police personally participated in the allegedly unlawful raid of his home, Greer v. City of Highland Park, No. 15CV12444, 2016 WL 4206008, at *2 (E.D. Mich. Aug. 10, 2016); the City of Battle Creek, Michigan could be found liable where its Chief of Police allegedly approved video surveillance in the women's locker room, Gillespie v. City of Battle Creek, 100 F. Supp. 3d 623, 630 (W.D. Mich. 2015); Benton County, Tennessee could be liable for the Sheriff's actions in allegedly striking plaintiff and ordering the arrest of 100 people at an underage drinking party, Holloran v. Duncan, 92 F. Supp. 3d 774, 786 (W.D. Tenn. 2015); and Webb County, Texas could be liable for the Sheriff's decision to terminate plaintiff allegedly in retaliation for supporting his opponent, Arredondo v. Flores, No. CIVA L-05-191, 2006 WL 2459460, at *3 (S.D. Tex. Aug. 22, 2006). Likewise, Fentress County can be liable to the extent that Sheriff Cravens committed a constitutional tort in his role as a policymaker for the jail.

The Supreme Court has instructed that it is the "court's task ... to identify those officials or governmental bodies who speak with final policymaking authority" for the municipal entity whose action is alleged to have caused the constitutional violation at issue. McMillian v. Monroe Cnty., 520 U.S. 781, 784–85 (1997). As noted in Doe #1, Tennessee law provides that "[it] is the sheriff's duty to . . . [t]ake charge an custody of the jail of the sheriff's county, and of the prisoners therein," Tenn Code Ann. § 8-8-201(a)(3), and "it is generally accepted that the sheriff is the final policymaker over the operation of a county jail," Freeman v. Weatherford, No. 3:12-CV-266, 2012 WL 2344633, at *5 (M.D. Tenn. June 20, 2012) (collecting cases); see also, Johnson v. Rutherford Cty., Case No. 3:15-cv-01495, Doc. No. 190 slip op at 7, ____ WL ___ (M.D. Tenn. May 14, 2018)

7

(discussing the final policymaking authority of Sheriff at Tennessee county jail). Therefore, because Wright alleges that he was deprived of his constitutional rights by Sheriff Cravens in his role as the policymaker for the jail, municipal liability could attach to Fentress County and dismissal is not appropriate as to that Defendant.

### III. State Law Claims

Wright "does not oppose the Defendant's motion as it relates his state intentional tort claims," and asserts "those claims are being made only against Defendant Cravens in his individual capacity." (Doc. No. 12 at 1). Accordingly Wright's claims for assault, battery, and the intentional infliction of emotional distress will be dismissed as to Fentress County.

### IV. Conclusion

On the basis of the foregoing, the Motion to Dismiss will be granted with respect to Wrights' state law claims against Fentress County, but denied with respect to his federal claims against that entity.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE